# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| TARGET MEDIA PARTNERS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 09 C 6922 |
| | ) |
| GREG OWEN, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Gregg Owen has filed an arbitration proceeding before JAMS, a private arbitration firm in Chicago, against his former employer Target Media Partners (TMP). TMP has filed suit to enjoin the arbitration, on the grounds that it did not consent to arbitrate disputes before JAMS and the claims at issue are governed by an arbitration provision that states that disputes should be arbitrated before the American Arbitration Association (AAA) in Las Vegas, Nevada. Owen moves for summary judgment. For the reasons stated below, the Court denies the motion. (Based on plaintiff's recent submission, the Court finds that it has subject matter jurisdiction.)

## Facts

From 2000 to 2002, Owen was employed as the general manager of "Autofocus," a trade publication owned by Target Media Partners Operating Company, a Nevada corporation (TMPNV). Owen's employment at TMPNV was governed by an employment agreement. Under the employment agreement, Owen received a salary

and several kinds of stock options, including direct awards of stock for each year of employment, traditional stock options, and warrants that gave him the right to purchase a 1.57 percent share in TMPNV (his "warrant percentage") in the event of an initial public offering or a sale of the company. The warrants were governed by a separate warrant agreement, which was incorporated by reference into the employment agreement. Under the warrant agreement, Owen also received cash disbursements, called "dividends," that were calculated by multiplying the free cash flow of the company by his warrant percentage.

In March 2002, TMPNV terminated Owen's employment and subsequently filed suit in state court in DuPage County, Illinois to prevent Owen engaging in competing business activities. Owen counterclaimed, alleging that TMPNV had dismissed him without cause and had therefore violated the terms of the employment agreement.

Owen's employment agreement included an arbitration clause that provided that employment disputes be arbitrated before the AAA in Chicago. The parties agreed, however, to arbitrate their dispute before JAMS instead. Arbitration of TMPNV's claim and Owen's counterclaim began before JAMS in 2003 (the "first arbitration"). In 2007, the JAMS arbitrator issued an award in Owen's favor that included unpaid salary, unpaid bonus, shares of TMPNV stock, and "warrant dividend payments" for the years 2001-2006.[1] The arbitrator ruled that his awards were final, and the awards were later confirmed by Judge Robert Gettleman of this district. *Owen v. Target Media Partners*

---

[1] The Court assumes that the term "warrant dividend payments" as it is used in the arbitration award means the same thing as the term "dividends" used in the warrant agreement.

*Op. Co.*, Case No. 07-6027. A full satisfaction and release of judgment was entered on October 8, 2008, and the case was dismissed with prejudice on November 7, 2008.

In 2005, TMPNV merged into Target Media Partners, a Delaware corporation (TMP). TMPNV stock shares were repurchased in a recapitalization transaction and became TMP stock. The arbitration award gave Owen "2,000 shares of TMP stock." Although TMPNV did not exist at the time of the arbitration award, Owen appears to have been unaware of the merger with TMP, and he requested (and was issued) stock certificates for 2000 shares of stock in the then-defunct TMPNV. Owen also received a check for the cash portion of the award, including the warrant dividends for the 2001-2006 period.

On August 11, 2009, Owen initiated a second arbitration against TMP before JAMS, claiming TMP had failed to pay him warrant dividends for 2007 and 2008 to which he was entitled. Before an arbitrator was selected, TMP notified JAMS that commencement of this second arbitration was improper because it violated JAMS rule 5, which requires both parties to consent to arbitration. TMP argued that although it had agreed to use JAMS in the first arbitration, that agreement ended with the conclusion of the first arbitration in 2007. On October 22, 2009, JAMS sent the parties a letter instructing them to proceed with selecting an arbitrator and stating that TMP's argument about whether Owen's claim was arbitrable would be decided by the arbitrator.

After receiving the letter from JAMS, TMP filed the current lawsuit to enjoin the arbitration. TMP contends the parties' agreement to arbitrate before JAMS in the first arbitration was limited to disputes arising out of the employment agreement and that

3

TMP never consented to use JAMS to arbitrate future disputes. According to TMP, Owen's action seeking warrant dividends for 2007 and 2008 falls outside of the scope of the first arbitration. TMP contends that Owen's request for 2007 and 2008 warrant dividends is instead governed by the warrant agreement, which it claims identifies AAA in Las Vegas, Nevada as the proper forum for arbitration. Therefore, TMP contends, the arbitration before JAMS is improper.

Owen contends that his request for warrant dividends from 2007 and 2008 is merely a continuation of an issue that was already litigated in the first arbitration, and therefore arbitration before JAMS is appropriate. He argues that TMP is precluded from arguing that it has not consented to arbitration before JAMS, because TMP made the same argument in the first arbitration, and the arbitrator ruled against it. Therefore, Owen contends, arbitration before JAMS is appropriate and he is entitled to summary judgment on TMP's current claim before this court.

## Discussion

**A.  Substantive claims about warrant dividends**

The Court notes at the outset that the parties agree that Owen's claim for 2007 and 2008 warrant dividends is subject to arbitration; they dispute only *where* such arbitration should take place. The Court therefore does not address the merits of Owen's claim. To make its current ruling, the Court discusses some of the facts underlying Owen's claim for 2007 and 2008 dividends, but this should not be interpreted as reflecting the Court's views on the merits of that claim.

**B. Summary judgment arguments**

On a motion for summary judgment, the Court draws "all reasonable inferences from undisputed facts in favor of the nonmoving party and [views] the disputed evidence in the light most favorable to the nonmoving party." *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2009).

Owen makes two arguments in favor of his motion for summary judgment: TMP is precluded from disputing that JAMS is a proper forum; and the current warrant divided claims fall within the scope of the parties' agreement to use JAMS.

*1. Issue preclusion*

Under the Full Faith and Credit Act, a federal court must give the same preclusive effect to a state court judgment that it would be given by another court of the state. 28 U.S.C. § 1738; *Exxon Mobil Corp. v. Saudi Basic Inds. Corp.*, 544 U.S. 280, 293 (2005). When a federal court is considering a state law issue and a party claims that an earlier state decision has preclusive effect, the federal court must apply state law in determining whether relitigation of the issue is precluded. *Jarrard v. CDI Telecomms., Inc.*, 408 F.3d 905 (7th Cir. 2005). The first arbitration was conducted in Illinois applying Illinois law, so to determine the preclusive effect of the prior adjudication, the Court looks to Illinois law.

Under Illinois law, issue preclusion applies when the issue has been "fairly, completely, and necessarily resolved in a prior proceeding." *Taylor v. Peoples Gas Light & Coke Co.*, 275 Ill. App. 3d 655, 660, 656 N.E.2d 134, 139 (1995). An arbitration award has the same preclusive effect as a court judgment unless the arbitration

proceeding was unfair or the result unreliable, or giving the award preclusive effect would be incompatible with other legal or contractual policies. *Id*. at 661, 656 N.E.2d at 140. Issue preclusion applies if the issue decided in the prior adjudication is identical to the one presented in the instant suit; the prior suit resulted in a final judgment on the merits, and the party against whom preclusion is asserted was a party or in privity with a party to the prior suit. *Id.* (citing *In re Nau*, 153 Ill. 2d 406, 424, 607 N.E.2d 134, 143 (1992)).

In the first arbitration, TMP argued that issues relating to warrants to purchase stock and warrant dividends should not be part of the arbitration proceeding, because they did not relate to Owen's employment agreement. Defs.' Mot. for Summ. J., Ex. 3. TMP argued to the arbitrator that the warrant agreement, which governed Owen's warrants to purchase TMP stock, included an agreement to arbitrate any disputes arising thereunder before AAA in Nevada. Therefore, TMP contended, the first action before JAMS could not address any disputes over Owen's right to purchase stock options or his entitlement to dividends, because those issues had to be arbitrated before AAA in Nevada.[2]

Owen countered that his claims for warrants and warrant dividends were properly considered as part of the arbitration of his employment agreement. The employment agreement's arbitration clause covered all disputes "arising out of or relating to" the

---

[2] The parties have submitted different versions of the warrant agreement. Owen contends that the version he was presented with when he signed his employment agreement did not include an arbitration clause that identified AAA in Nevada. Because the Court's ruling does not depend on determining which version of the warrant agreement binds Owen, it makes no finding on this issue.

6

agreement. He argued that because the warrants were part of his compensation package, his claims for the warrants arose out of or related to his employment agreement and were therefore properly before the JAMS arbitrator. *Id.*, Ex. 4.

The arbitrator agreed, ruling that the "value of the warrants is part of Claimant's claim under the Employment agreement and is a 'dispute among the parties arising out of or relating to this Agreement,'" and therefore could be considered in the first arbitration. *Id.*, Ex. 5. TMP sought reconsideration, but the arbitrator reaffirmed the ruling.

Owen now argues that the arbitrator's ruling in the first arbitration should preclude TMP from arguing that JAMS is an inappropriate venue for his current claim for 2007 and 2008 dividends. Owen's new claim before JAMS is that "Owen's right to be paid Warrant dividends under the Warrant Agreement was fully and finally decided by Judge Sullivan [the arbitrator] on May 23, 2007." Compl., Ex. I ¶ 12. The first arbitration award, however, makes no mention of warrant dividends for 2007 or 2008. The section of the arbitration award that mentions warrant dividends reads as follows:

> [T]he Arbitrator awards the Claimant, Gregg Owen, $209,127.09 in salary, a bonus of $171,000 for 2001, 2000 shares of TMP stock, and warrant dividends of $482,430.79 for 2001 through 2005. The Arbitrator finds that the Claimant is entitled to warrant dividends for 2006, that amount to be determined when the 2006 numbers are made available.

Compl., Ex. C ¶ 8.

The grounds on which Owen now seeks 2007 and 2008 warrant dividends are not entirely clear. In support of his motion for summary judgment, Owen argues that "the arbitrability issue that TMP Nevada raised in the First Arbitration is the same arbitrability issue that [TMP] has raised in this lawsuit" and should therefore be

7

precluded. Defs.' Mem. in Support of Summ. J. at 9.

TMP disagrees. It argues that "the only issue resolved at the prior arbitration was whether Defendant's employment was terminated for cause, thereby vitiating his entitlement to dividends under the then existing Warrant Agreement." Pl.'s Mem. in Opp. to Summ. J. at 9. TMP contends that Owen did not receive dividends in 2007 and 2008 not because of anything concerning his employment agreement, but because he failed to sign merger and joinder agreements to transform his warrants in the defunct TMPNV to shares in TMP. Therefore, TMP argues, Owen's current claim arises out of "events subsequent to the initiation of the arbitration . . . [that] were never a part of Defendant's original claim." *Id*. at 10.

When TMPNV merged into TMP, all warrants in TMPNV were cancelled in exchange for the right to receive a security interest in TMP. This exchange required the execution of a "joinder agreement" and the execution and delivery of a letter of transmittal exchanging the warrants. TMP argues that Owen has not received warrant dividends because he has not transformed his warrants in TMPNV into shares of TMP, not because of anything related to his employment agreement. Therefore, TMP argues, the issue of whether the current claim for warrant dividends is arbitrable is entirely different from whether the claim for warrant dividends in the first arbitration was arbitrable.

Owen's employment agreement included several kinds of compensation in the form of stock. The first was for an automatic award of 500 shares of stock per year for four years (which is presumably how the arbitrator arrived at the 2000 shares figure in the first arbitration award). The second was for "stock options" in TMPNV, defined as

8

the opportunity to purchase 1000 shares of stock, exercisable at a stated price and vesting at 25% per year. The third was for "Autofocus warrants," which are warrants to purchase a 1.57 percent share in Autofocus in the form of TMP stock, exercisable if TMP engaged in an "exit event" (defined as the issuance of an initial public offering, sale of TMPNV, or sale of Autofocus). Def.'s L.R. 56.1 Stat., Ex. A at 5-6. The only one of these three types of stock compensation that refers to a warrant agreement is the Autofocus warrants.[3]

In the first arbitration, Owen was awarded 2000 shares of stock, though stock in which entity is not entirely clear from the arbitration award. In December 2007, counsel for TMP and Owen exchanged letters about these shares of stock. In a letter dated December 6, 2007, TMP informed Owen that this award of shares was for stock in the now-defunct TMPNV and that to receive shares of TMP, he would need to execute a letter of transmittal. TMP contends that Owen never executed such a letter.

In its brief opposing summary judgment, TMP argues that the December 6 letter demonstrates that the failure to pay 2007 and 2008 warrant dividends is unrelated to the first arbitration but instead arises from Owen's failure to execute the necessary paperwork to effectuate the transfer of shares from TMPNV to TMP. Pl.'s Mem. in Opp. to Summ. J. at 2. This argument appears to be in error. In TMP's responses to Owen's Local Rule 56.1 statements, it admits that the December 6 letter involved the shares of stock that Owen was issued under the arbitration award, not the warrants or warrant

---

[3] To say that the employment agreement and the accompanying warrant agreement describing Owen's various forms of stock compensation are not models of clarity would be a serious understatement.

9

dividends. Pl.'s Resp. to Def.'s L.R. 56.1 Stat. ¶¶ 36-39.

That does not mean, however, that TMP necessarily loses on summary judgment. To determine whether TMP's claim is precluded, the question is whether the issue decided in the prior arbitration is *identical* to the one presented in the present suit. *Taylor*, 275 Ill. App. 3d at 660, 656 N.E.2d at 139. When the arbitrator in the first arbitration awarded Owen warrant dividends, he did so as part of a package that also included back salary and back bonus. Viewed this way, the warrant dividends seem to have been part of a package designed to compensate Owen for the salary, options, and other financial benefits that he did not receive because he was wrongfully terminated. It appears that warrant dividends beyond 2006 were not included in that package of lost compensation.

It is not clear from Owen's claim for 2007 and 2008 dividends what he believes he is requesting, in part because the status of his warrants to purchase under the original employment agreement is unclear. The first arbitration award only addresses warrant dividend payments for 2001-2006, which the parties agree have already been paid. The award did not give Owen any warrants, but it is possible that he already possessed them at the time he was terminated and believes he is entitled to ongoing dividends from those warrants (though, as TMP points out, his warrants were to purchase stock in TMPNV, an entity that no longer exists). It is also possible that Owen's current claim mistakenly uses the term warrant dividends to refer to any dividend proceeds on the 2000 shares of stock he was awarded in the first arbitration award.

The evidence suggests that although both the first arbitration and the current

claim use the term "warrant dividends," the underlying facts may well be quite different. Owen's conclusory statement that the arbitrability issue here is the same as the one in the prior arbitration does not persuade the Court that the issues are identical for purposes of issue preclusion. The Court therefore rejects Owen's argument that the Court should grant summary judgment in his favor on that ground.

    2.    *Agreement to use JAMS instead of AAA*

Owen also contends that his current claim for warrant dividends from 2007 and 2008 falls within the parties' agreement to use JAMS instead of AAA. He contends that "while the years of [TMP's] refusal to pay the dividend are different, the dispute is the same." Def.'s Mem. in Support of Summ. J. at 10.

As discussed above, TMP disputes Owen's characterization that this is the same dispute that was decided in the first arbitration dealing with Owen's employment agreement. According to TMP, Owen has not been paid the dividends he now seeks because he has failed to complete the paperwork necessary to transform his TMPNV warrants into shares of TMP. This circumstance, TMP argues, arose after and independently of the first arbitration, and it is unrelated to his employment agreement. Because the agreement to use JAMS applied only to disputes arising under the employment agreement, TMP argues, Owen's current claim is not properly before JAMS. Therefore, TMP argues, the issue is not the same as the one previously decided, and their agreement to arbitrate before JAMS in the first arbitration does not extend to this claim.

For the same reasons as above, the Court concludes that there is a genuine issue of fact regarding whether Owen's current claims arise out the first arbitration such

11

that the agreement to use JAMS still applies, or whether they are separate claims not covered by the agreement. The Court therefore denies Owen's request for summary judgment on this basis.

**Conclusion**

For the reasons stated above, the Court denies Owen's motion for summary judgment. The case is set for a status hearing on June 30, 2010 at 8:45 a.m.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: June 11, 2010